UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| PRINTICE FRANKLIN, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) |  |
| v. | ) ) | Cause No. 3:13-CV-673 JD |
| OFFICER S. FEWELL, *et al.,* | ) ) ) |  |
| Defendants. | ) |  |

OPINION AND ORDER

Printice Franklin, a *pro se* prisoner, is proceeding on a claim that the defendants were deliberately indifferent to his medical needs while he was housed at Miami Correctional Facility ("Miami"), resulting in him needing emergency surgery to remove his appendix and part of his intestine. (DE 11.) The defendants—two correctional officers and a nurse—move for summary judgment on the ground that Franklin failed to exhaust his administrative remedies before filing suit. (DE 24, 28.)

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). Nevertheless, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but

rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Pursuant to the Prison Litigation Reform Act ("PLRA"), prisoners are prohibited from bringing an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The failure to exhaust is an affirmative defense on which the defendant bears the burden of proof. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The U.S. Court of Appeals for the Seventh Circuit has taken a "strict compliance approach to exhaustion." *Id.* Thus, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

Nevertheless, inmates are only required to exhaust administrative remedies that are "available." *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). The availability of a remedy is not a matter of what appears "on paper," but rather whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Thus, when prison staff hinder an inmate's ability to use the administrative process, such as by failing to provide him with the necessary forms, administrative remedies are not considered "available." *Id.* In essence, "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809. Furthermore, "a remedy is not 'available' within the meaning of the Prison Litigation Reform Act to a person physically unable to pursue it." *Hurst v. Hantke*, 634 F.3d 409, 412 (7th Cir. 2011). When there are

2

disputed issues of fact pertaining to whether the plaintiff properly exhausted, the court is required to hold a hearing to resolve those disputes. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).

Here, the record shows that Franklin was an inmate at Miami from July 27, 2008, to January 14, 2013. (DE 26-1, Valdez Aff., ¶ 6.) At all relevant times, and pursuant to Indiana Department of Correction ("IDOC") policy, Miami had a grievance process under which an inmate could grieve a broad range of issues, including the actions of prison staff members. (*Id.* ¶¶ 7, 12.) The grievance process has three steps: an attempt at informal resolution; submission of a formal grievance; and submission of a written appeal. (*Id.* ¶¶ 13-22.) The first step requires the inmate to try to resolve his dispute informally by contacting an appropriate staff member within five working days of the underlying incident. (*Id.* at 13.) Working days are defined as Monday through Friday, excluding any state holidays. (DE 26-3, IDOC Manual of Policies and Procedures ("Grievance Policy") § III(N).) If the issue cannot be resolved informally, the inmate must file a formal grievance after: (1) he is informed there will be no informal resolution; (2) he refuses an offered informal resolution; or (3) the informal grievance has been pending 10 working days and he has received no response. (DE 26-1, Valdez Aff. ¶ 17; DE 26-3, Grievance Policy § XIII.) An inmate has five working days to submit a formal grievance following one of these precipitating events. (DE 26-1, Valdez Aff. ¶ 17.) In any event, an inmate must submit a formal grievance no later than 20 working days from the incident giving rise to his complaint. (*Id.* ¶ 18.)

The incident giving rise to this lawsuit occurred on June 27, 2011, when the defendants allegedly ignored Franklin's complaints that he was in need of medical treatment. (DE 1 at 3.) Later that same day, Franklin was taken to an outside hospital where he underwent surgery. (DE 26-1, Valdez Aff. ¶ 29.) He returned to the prison on July 3, 2011, and was taken to the prison infirmary.

(*Id.* ¶ 30; DE 26-6, Medical Records at 1-2.) He remained in the infirmary until July 11, 2011, at which time it was determined by a prison physician that he had sufficiently improved and could be released to the general population. (DE 26-8, Medical Records at 3; DE 26-9, Medical Records at 1.)

On July 21, 2011, Franklin made a public records request seeking the names of the prison staff members who had allegedly denied him proper medical care.[1] (DE 26-12, Records Request at 1.) He obtained the names on July 25, 2011, and submitted an informal grievance to the superintendent on July 27, 2011. (DE 26-12, Records Request at 2; DE 26-10, Grievance; DE 26-13, Informal Grievance.) According to Franklin, the superintendent responded on August 2, 2011, acknowledging the grievance but stating that he would not comment because it appeared Franklin intended to pursue a lawsuit. (*See* DE 1-6, Pl.'s Chronological Summary.) Franklin claims that on August 2, 2011, he submitted a formal grievance to the facility's executive assistant, Clair Barnes. (DE 30, Pl.'s Designation of Evidence; DE 1-4, Request for Interview; DE 1-6, Pl.'s Chronological Summary.) However, the prison has no record of this grievance. (DE 26-1, Valdez Aff. ¶¶ 32-39.) On August 23, 2011, Franklin sent correspondence to Barnes inquiring about the status of his grievance. (DE 1-4, Request for Interview.) She responded that she had no grievance on file. (*Id.*) Franklin then submitted a grievance on August 31, 2011, which was rejected as untimely by Barnes. (DE 26-11, Grievance Response.)

Based on these facts, the defendants argue that they are entitled to summary judgment. (DE 25.) They first argue that Franklin's informal grievance was untimely because it was not filed within

---

[1] The Grievance Policy does not actually require inmates to include the names of staff members about whom they are complaining. (DE 26-1, Valdez Aff. ¶ 50.) If the staff member considering the grievance concludes that further information is needed to properly investigate the incident, the grievance will be returned and the inmate given additional time to provide any requested information. (*Id.* ¶ 51.)

five days of the underlying incident. (*Id.* at 12.) It is undisputed that Franklin did not submit his informal grievance to the superintendent until July 27, 2011; under the grievance policy this was untimely, even if the court presumes that Franklin was unable to file an informal grievance until after he was released from the infirmary on July 11, 2011. *See Hurst*, 634 F.3d at 412. Thus, the superintendent could have rejected the informal grievance on this procedural ground. (*See* DE 26-1, Valdez Aff. ¶ 13.) However, at present, there is nothing in the record to reflect that the superintendent actually relied on the time deadline to reject Franklin's informal grievance. "A procedural default in state proceedings is fatal to the litigation in federal court only if the state tribunal explicitly relies on that default." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004). In other words, if the superintendent did not reject the informal grievance solely because it was untimely, the state cannot rely on Franklin's failure to comply with the deadline here. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) ("Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense."); *Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005) ("[A] procedural shortcoming like failing to follow the prison's time deadlines amounts to a failure to exhaust only if prison administrators explicitly relied on that shortcoming."); *Ford*, 362 F.3d at 398 (by deciding the prisoner's grievance without invoking a forfeiture doctrine, the state could not argue failure to exhaust).

According to Franklin, the superintendent "acknowledged" his informal grievance but stated that he would "not comment" on it because it appeared Franklin intended to pursue civil litigation. (DE 26-10, Grievance; DE 1-6, Pl.'s Chronological Summary.) This would not appear to be a

5

rejection on timeliness grounds. However, for unknown reasons, the defendants have not supplied the court with an official copy of the superintendent's response. Given the ambiguity in the record, the defendants have not demonstrated an entitlement to summary judgment, but they will be afforded an opportunity to demonstrate at an evidentiary hearing that Franklin's informal grievance was rejected as untimely. *See Pavey*, 544 F.3d at 742. If they do so, then Franklin did not properly exhaust his administrative remedies as required by the PLRA and the case must be dismissed. *Pozo*, 286 F.3d at 1025 ("[I]f the state stands on its time limits and rejects the filing as too late, then state remedies have not been properly invoked.").

The defendants next argue that even if Franklin's informal grievance was timely, he failed to properly exhaust because he did not submit a formal grievance until August 31, 2011. (DE 25 at 13.) There is no dispute that the August 31, 2011, grievance was untimely under prison rules. However, Franklin claims that he originally submitted his grievance on August 2, 2011, and then resubmitted it in August 31, 2011, after it was lost or misplaced by prison staff. The defendants have no record of a grievance filed on August 2, 2011, but this does not mean Franklin did not file it as he claims. The defendants suggest that Franklin is lying to cover his tracks, but whether he did or did not submit a grievance on this date requires a credibility determination that cannot be made without an evidentiary hearing. *See Pavey*, 544 F.3d at 742; *see also Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (observing that on summary judgment the court cannot "make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts").

The defendants suggest that even if a grievance was filed on August 2, 2011, it was untimely in any event because this was more than 20 days after the underlying incident. (DE 25 at 12-13.) However, Franklin cannot be penalized for the days when he was physically unable to file a

grievance. *Hurst*, 634 F.3d at 412. The defendants appear to concede that he could not be expected to file a grievance when he was at an outside hospital undergoing emergency surgery, but they nevertheless suggest that the 20-day deadline started running as soon as he returned to the prison on July 3, 2011. (DE 25 at 13.) Yet the record reflects that for the first several days following his return, Franklin was in the prison infirmary where he was recovering from major surgery. (DE 26-6 to 26-9, Medical Records.) He was also taking prescription pain medication, which could have impaired his ability to function. (DE 26-6, Medical Records at 2.) As the defendants point out, some of the records reflect that Franklin appeared to be feeling better and made inquiries about returning to the general population while he was in the infirmary. (DE 26-8, Medical Records at 1-2.) Nevertheless, exactly when Franklin was improved to the point that he could request and complete the necessary grievance forms cannot be determined from the present record. If Franklin was not physically capable of filing a grievance until July 11, 2011—the date he was released from the infirmary—the grievance he claims to have filed on August 2, 2011, would have been timely. Of course this assumes he filed a grievance on August 2, 2011, but as stated above that issue cannot be determined without an evidentiary hearing.

Accordingly, summary judgment cannot be granted based on the present record.[2] The motion will be denied. Unless the defendants withdraw their exhaustion defense, it will be necessary to hold a hearing pursuant to *Pavey* to resolve the following issues: (1) the date when Franklin became

---

[2] Although unclear, the defendants may also be arguing that Franklin did not exhaust because he failed to file an appeal after his formal grievance was rejected as untimely. (DE 33 at 2.) The court finds no merit to such an argument. The form that was sent to Franklin did not notify him that he had any right to appeal, nor is there anything in the grievance policy indicating that an inmate has a right to appeal a rejected grievance. (*See* DE 26-3, Grievance Policy § XIV(E).) Indeed, Franklin has submitted documentation showing that he specifically asked if he could proceed to the next step, and was informed by prison staff that "[p]er policy, you cannot appeal a rejected grievance[.]" (DE 1-4 at 1.) Under these circumstances, Franklin cannot be penalized for failing to file an appeal. *See Kaba*, 458 F.3d at 684.

physically capable of submitting a grievance following his return from the hospital on July 3, 2011; (2) whether Franklin's informal grievance was rejected solely on grounds of untimeliness; and (3) whether Franklin filed a formal grievance with the prison's executive assistant on August 2, 2011.

For these reasons, the defendants' motion for summary judgment (DE 24) is **DENIED**. Within fourteen (14) days of this order, the defendants are **ORDERED** to file a notice advising the court whether they wish to waive their exhaustion defense or proceed with a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

SO ORDERED.

ENTERED: February 7, 2014

                                                  /s/ JON E. DEGUILIO
                                                  Judge
                                                  United States District Court