IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| PRINTICE FRANKLIN, | ) | |
| Plaintiff, | ) | |
| vs. | ) | CAUSE NO. 3:13-CV-673 |
| OFFICER S. FEWELL, *et al.*, | ) | |
| Defendants. | ) | |

**REPORT & RECOMMENDATION**

The defendants, Officers Fewell and Mygrant, moved for summary judgment, arguing that the Plaintiff, Printice Franklin, failed to exhaust his administrative remedies prior to filing suit in accordance with 42 U.S.C. § 1997e(a). (DE 24.) In ruling on the motion for summary judgment, the District Court found there to be a genuine issue of material fact precluding the entry of summary judgment. (DE 34, 51.) Specifically, the District Court found a dispute as to whether Franklin filed a formal grievance on August 2, 2011.[1] (DE 51.) The presiding judge referred this matter for a report and recommendation to determine the factual issue of whether Franklin filed a formal grievance on August 2, 2011. (DE 37, 62.)

On March 10, 2015, the Court held an evidentiary hearing. Franklin appeared *pro se*, and Officers Fewell and Mygrant were represented by attorneys Christina Clark and Brian Park. Clair Barnes Beaver ("Barnes"), former litigation supervisor at Miami, and April Valdez ("Valdez"), former prison disciplinary board employee at Miami, testified on behalf of the defendants. Franklin testified on his own behalf. The defendants also admitted eleven exhibits: a copy of the grievance

---

[1]After the summary judgment motion was denied, both officers moved for an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). (DE 35.)

policy in effect January 1, 2010; six letters of correspondence between Clair Barnes and Franklin; Franklin's August 24, 2011, Request for Interview; two copies of Franklin's August 31, 2011, formal grievance; and a September 7, 2011, Return of Grievance. Franklin submitted one exhibit: his August 24, 2011, Request for Interview.

I. **FINDINGS OF FACT**

In making the following findings of fact, the court considered the credibility of the witnesses.

Both Barnes and Valdez testified that Miami Correctional Facility ("Miami") had a number of locked grievance mailboxes throughout the facility where offenders could return official grievance forms. At the time in question, only Barnes, who was responsible for overseeing the grievance process at Miami, and her assistant, Valdez, had the authority and ability to open the mailboxes and collect the forms. Once the forms were collected from the mailboxes, they were handled carefully and always remained in a staff member's custody until they were delivered to Barnes for processing. Neither Barnes nor Valdez had ever lost an offender's grievance form that was placed in a grievance mailbox.

After an offender submitted a formal grievance, he received either a receipt showing that the grievance is being processed or a return of grievance form showing that the grievance has been rejected. Miami keeps computer records of all processed formal grievances and paper copies of all rejected formal grievances. Miami has no record that Franklin submitted a formal grievance on August 2, 2011.

On August 24, 2011, Franklin sent Barnes a request for interview form inquiring about the status of an alleged August 2, 2011, grievance. (Ex. F.) When Barnes received this form, she looked

2

for that purported grievance. She reviewed the computer records to see if such a grievance was pending, the paper records of rejected grievances to see if it was rejected, and the mail to check if it was recently submitted. Barnes found no evidence of any August 2, 2011, grievance and informed Franklin that no such grievance existed. (*Id.*)

Franklin then filed a formal grievance on August 31, 2011, complaining of receiving inadequate medical care. (Ex. E.) On September 7, 2011, Barnes rejected and returned the August 31, 2011, grievance as untimely. (Ex. G.) On September 13, 2011, Franklin sent Barnes a letter asking her to reconsider that decision, explaining that his August 31, 2011, grievance was filed late because of his medical condition and due to his being in the infirmary until July 11, 2011. (Ex. J1.) Barnes responded by explaining that grievance forms were available in the infirmary. (Ex. J.) On September 15, 2011, Franklin again wrote to Barnes stating that he could not file a grievance while he was in the infirmary because he was in constant pain and taking medication. (Ex. H.) On September 23, 2011, Franklin wrote to Barnes again repeating his inability to file a grievance while in the infirmary. (Ex. I.)

Even though Miami had a grievance process in place, and Franklin was provided with a copy of the grievance procedures during orientation, he never read them prior to submitting his formal grievance. He was unaware of what forms needed to be submitted and also unsure of the applicable deadlines. He relied on fellow inmates' advice to navigate the grievance process. Franklin was supposed to notify the Executive Assistant if he did not receive either a receipt or a rejected form within seven working days after submitting a formal grievance. (Ex. A at 17.)

Franklin testified that he placed a formal grievance form in one of the locked grievance mailboxes on August 2, 2011. However, the only evidence that Franklin filed a grievance on that

3

date is his own testimony, which this court finds not credible for a number of reasons. To start, Franklin has made conflicting accounts in this case, which give the court reason to question his veracity. At the hearing, Franklin testified that he was fully capable of filing a formal grievance on July 3, 2011, while he was still in the infirmary. In his September 2011 letters written to Barnes, however, he explained his untimely grievance filing was a result of him being unable to file a formal grievance until after he left the infirmary. Franklin admitted that his in court testimony was at odds with his prior representations to Barnes. Franklin's contradictory accounts about when he was able to file a formal grievance diminish his credibility here.

Moreover, if Franklin would have placed a formal grievance in the one of the locked mailboxes, it would have more than likely been properly handled and resulted in some record being generated at Miami. The absence of any record of an August 2, 2011, grievance heavily weighs against Franklin's assertion that he placed a formal grievance form in the mailbox on that date. Franklin's account also conflicts with Barnes' and Valdez's credible testimony that they never received such a grievance.

During and after the March 10, 2015, hearing, the court carefully considered the credibility and demeanor of Franklin, Barnes and Valdez. After careful consideration, this Court credits Barnes' and Valdez's testimony. Their testimony and the submitted evidence establish that they never attempted to obstruct the grievance process. Their testimony was consistent with one another and the documentary evidence in all material respects. And, because neither Barnes nor Valdez is a party to this case, they have no motivation to fabricate testimony. Ultimately, there is nothing in the record that places their credibility in question. Conversely, as explained above, the court finds that Franklin's testimony that he filed a formal grievance on August 2, 2011, is not credible.

4

Accordingly, after weighing the credibility and demeanor of the witnesses, and when forced to reconcile the conflicts between Franklin's version of events with Barnes' and Valdez's account, the Court credits the testimony of Barnes and Valdez and discredits the testimony of Franklin. As such, the court finds that Franklin never submitted a formal grievance on August 2, 2011.

## II.  CONCLUSIONS OF LAW

Pursuant to the Prison Litigation Reform Act ("PLRA"), prisoners are prohibited from bringing an action in federal court with respect to prison conditions until "such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The failure to exhaust is an affirmative defense on which the defendant bears the burden of proof. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[U]nless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred." *Id.* at 1023.

Here, the defendants established that there were administrative remedies available to Franklin, but he failed to file a timely formal grievance. In fact, the court has found that Franklin did not file a formal grievance until August 31, 2011, when it was rejected for being approximately a month later than the grievance policy permitted. As such, the Court concludes that Franklin did not exhaust his administrative remedies due to his failure to file a formal grievance on August 2, 2011. Because Franklin did not satisfy the exhaustion requirement before bringing this lawsuit, his claims against Officer Fewell and Officer Mygrant must be dismissed.

**III.     CONCLUSION**

For the foregoing reasons, the Court finds that Printice Franklin did not file a formal grievance form on August 2, 2011 and, therefore, **RECOMMENDS** that Officer Fewell and Officer Mygrant be **DISMISSED WITHOUT PREJUDICE** for Franklin's failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a).

**NOTICE IS HEREBY GIVEN** that within 14 days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. FED. R. CIV. P. 72(b); 28 U.S.C. § 636(b). Failure to file objections within the specified time waives the right to appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Lerro v. Quaker Oats Co.*, 84 F.3d 239 (7th Cir. 1996).

SO ORDERED.

Dated this 19th Day of March, 2015.

S/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge